Eastern Dis.
May, 1834.

ORLEANS NAVI-
GATION CO.
vs.
ALLARD
ET ALS.

---

ORLEANS NAVIGATION COMPANY *vs.* ALLARD ET ALS.

APPEAL FROM THE COURT OF THE FIRST JUDICIAL DISTRICT.

Where it is clear from the testimony of the case that a road was not made in conformity to law; but it had been examined and received by persons duly authorized for that purpose; it was held that its original structure could not be enquired into.

The verdict of a jury on a question of fact unless clearly contrary to evidence will not be disturbed.

In 1830 the Orleans Navigation Company filed their petition, in which they alleged, " That by the 13th section of the act entitled an act for improving the inland navigation

EASTERN DIS.
May, 1834.

ORLEANS NAVI-
GATION COMP.
vs.
ALLARD ET ALS
of the territory of Orleans, the President and Directors of the said Company were authorized to lay out and construct toll-roads on each side of the bayou St. John, such road or roads to be constructed of shells, sand, or other hard mate_rials, and to be at least of the breadth of twenty feet, and fit at all seasons for the passage of every kind of wheel carriages.

That Louis Allard, residing in the said parish and occupying a plantation with several negroes near to the said bayou, having proposed to the petitioners on or before the 23d day of July, 1819, to contract for the construction of such a road, it was agreed by and between the said parties, that Allard should undertake the construction of a road on the north side of the bayou; beginning at the point where the public road terminated to be continued to lake Pontchartrain; and to procure at his expense, the necessary materials, and to furnish, in like manner, the necessary hands therefor. The said road to be made in every respect such as is specified and required in the said thirteenth sec_tion of the said act; and the whole thereof to be so completed within the term of three years, according to the requisition and provision of the said section.

That Allard agreed with the plaintiffs that the said road should be always by him, during the existence of the said contract, kept in good order, condition, and repair; and that he should be answerable for all damages for his failure therein, and that in case of his continued neglect so to do, the petitioners should be authorized forthwith to take back the said road, in the same manner as if the term of twenty-two years mentioned in the subsequent article of their said contract had expired,

That for a considerable time during the year 1830, and previous to the 2d of April, the said road was not kept in good order, condition, and repair, conformably to the stipu_lations of Allard.

They pray that Allard may be ordered to deliver the said road to them, or to such person as they shall appoint to receive the same, and to pay to them one thousand dollars for damages.

EASTERN DIS.
*May*, 1834.

ORLEANS NAVI-
GATION COMP.
*vs.*
ALLARD ET ALS

And forasmuch as John Louis Rabassa pretends, without just cause, to have some right to the said road, and to demand money as toll for the passage on the said road, and keeps possession of a house and gate for the purpose of tolls. The petitioners pray that Rabassa may be made a party defendant; that he may be ordered to desist from demanding any tolls for the use of the road, and to relinquish to the petitioners the gate, and whatever possession he has of the road.

Allard pleaded the general denial.

Rabassa denies that the plaintiffs have any right to the road in their petition described. He admits he is in possession of the road and alleges that he maintains the same in as good order as when he received it.

He alleges that intending to lease said road from the President of the Lake Pontchartrain Road Company for the term of three years from the 1st August, 1828, he gave his notes to Denis Prieur, acting as president of said company for three thousand dollars for said lease.

He alleges that said notes are void because no such company exists.

He alleges that believing such a company existed, he gave his notes aforesaid, intending to subject himself to all the legal obligations of a lessee and expecting from said company all the legal obligations of lessors; but that afterwards the project of said lease was drawn up at the request of Prieur before Felix de Armas, Esq. a notary public, containing such onerous conditions and which were never contemplated by the respondent that he was unwilling to sign or take said contract.

He prays, on account of his misunderstanding with said company if it exists, and because of no legal authority in Denis Prieur, president as aforesaid, to make said lease, that Prieur may be made a party to this suit on behalf of said company, that the intended contract with them may be declared null, that notes given by respondent in consideration thereof may be cancelled and given up to him and in default thereof, that Prieur and Allard may be condemned to pay him the amount of said notes with interest.

EASTERN DIS.
May, 1834.

ORLEANS NAVI-
GATION COMP.
vs.
ALLARD ET ALS

The commissioners appointed by the Governor of the State to inspect the road made a report from which the following is an extract. " That after a careful survey and examination of the said road, of the bridges built thereon, and of the nature of the soil on which the whole stands, we are of opinion, that it is the result of considerable work and expence, and that although it does not appear that the said road is made of shells or sand, except in a few places where sand and shells are to be seen, the undersigned commissioners do not hesitate to pronounce that the said road is constructed of good and solid materials, and may be equalled in point of safety and convenience to the best roads in the State.    That the bridges are built of the best materials and with great caution, and are more than twenty feet in breadth, the road which extends and is completed one league, is more than twenty-five feet in width, and in some places exceeds thirty feet, and that the general construction of the said road renders it fit at all seasons for the passage of every kind of wheel carriages."

The case of each defendant was tried separately.

Rabassa's case was first tried and a verdict given in his favor.

In Allard's case, Freret testified " That he has for several years past been in the habit of riding from the city to the lake by the Pontchartrain Road.    Has never known said road in a good condition within eighteen months till within a few months past; he has been two or three times obliged to turn back, not being able to get to the lake; he has on other occasions been obliged to hire a coach, being afraid to drive his own gig, on account of the danger of being upset and injuring his horse.    Being asked what was the general state of said road during the time before mentioned, he says, that it generally is overflowed or in a muddy state.    On one occasion, witness and the other passengers in a coach, had to alight in order to get past a hole in the road where the driver said several carriages had already stuck. He is of opinion that it was impossible to keep said road in good order without raising it considerably; he has observed several deep and dangerous holes in said road which were

attempted to be covered by planks placed across and putting in branches of trees; he is of opinion, that horses were liable to be injured by getting into the holes; he thinks the road could not have been properly repaired by such means; he has seen carriages sticking in holes in said road. This road has been in the same state during the whole of the year 1830, and he thinks that by the attempts to repair it, as above mentioned, the road was made worse instead of better.

EASTERN DIS.
May, 1834.]

ORLEANS NAVI-
GATION COMP;
vs.
ALLARD ET ALS

Watts testified, that he had occasion to travel the Pontchartrain Road frequently during the months of January, February, March, April, and May, 1830, and was about twenty times at the lake during the course of the two latter months; he found the road generally very bad; he went on horseback and considered the road as impassable for carriages during that period; that is to say, a carriage could not travel it without risk of breaking the harness or the carriage, or getting the horses stuck fast in the mud. The bridges were also very bad, particularly near the lake; he considered that he ran a risk of breaking his horse's legs every time he went by said road from the bad condition of the bridges; he recollects of going down on one occasion, and at least one third of the road from the house of Mr. Wells to the lake was covered with water to a depth of five or six inches. That the surface of the road before mentioned, is composed of mud, he presumes, from the swamp, and from the materials of which it is composed, must necessarily become bad after wet weather or after being overflowed.

Twenty-four witnesses were called on the part of the plaintiffs, including Messrs. Freret and Watts, whose testimony is given above, and examined relative to the condition of the lake road in the winter and spring of 1830. They all concurred substantially with the statements of the two witnesses as above.

Joseph Pilie, a witness for defendant Allard, says he knows lake road since it was made and examined it. In his opinion the only mode to render this road practicable for carriages at all seasons of the year, would be to pave it

EASTERN DIS,
May, 1834.

ORLEANS NAVI-
GATION COMP.
vs.
ALLARD ET ALS

with shells to a depth of about eight inches throughout its whole extent. That if the road was constructed of earth like the common roads of the country, it would at times by the passage of carriages, become in some places impassable till repaired. The usual mode of filling up holes in roads is by letting the ground dry; the mud is scooped out of the holes, and the hole then filled with dry earth or other materials. There are very high tides in Lake Pontchartrain two or three times every year. These sometimes happen during the month of March. In these high tides and in high winds the waters of the lake frequently cover part of the bayou Road near the bridge. In the opinion of witness, the Pontchartrain Lake Road would, even if raised eight inches higher by shells, be in some places covered with water in these high tides. In other places of the road this elevation of soil would place it above the waters of the lake. Witness has made a calculation of the expense of covering a road of thirty feet wide and three miles in length with shells to a depth of eight inches; the expense of this would be thirty-six thousand dollars. That during the spring and summer of 1830, as he thinks, the roads in the neighborhood of the city and the streets, were from a long continuance of wet weather, in very bad condition. They remained in this state for a considerable time for want of proper materials to repair them, and they were obliged in many places to place planks over the holes in roads and streets. The Pontchartrain Lake Road from the toll gate to the lake, could not be kept in proper repair for less than two thousand five hundred to three thousand dollars a year.

J. L. Rabassa, co-defendant, after verdict in his favor, was also permitted to testify in behalf of Allard. His testimony corroborates that of Mr. Pilie. Several other witnesses were called by defendant, whose testimony is the same, with slight variations of circumstances and manner.

The plaintiff took a bill of exceptions to the introduction of Rabassa as a witness, on the ground that he was a party to the original suit and lessee of the lake road.

After hearing much other testimony of a circumstantial

nature, having a remote bearing on the case, the jury return-
ed a verdict for the defendant. From the judgment ren-
dered on this verdict the plaintiffs appealed.

MATHEWS, J., delivered the opinion of the court.

In this case the plaintiffs claim the forfeiture of the lake
Pontchartrain road, which had been made and constructed
by the defendant, Allard, under an agreement entered into
between him and the company, in pursuance of rights
granted in the charter of incorporation. They pray a judg-
ment ordering that he may deliver up the road to them.
Rabassa, is also made a defendant in the suit, and judgment
asked, requiring him to desist from claiming tolls, and to
surrender a toll-gate and house in his possession. The
defendants separated in their answers, and the cause was
tried separately against each by juries. The defendant
Rabassa obtained a verdict in his favor on the first trial.
But no verdict was returned in favor of Allard until after
two or three mistrials, in consequence of juries not being
able to agree. He, however, finally obtained a favorable
verdict. Judgments were rendered in favor of both
defendants, from which the plaintiffs appealed.

The suit is founded on the fourth section of the agreement
entered into between the plaintiffs and Allard, as above
stated. The company having authority granted them by
the thirteenth section of the act of incorporation, to make a
road on each side of the bayou St. John, and after comple-
ting and causing to be constructed and completed a road of
a specified description on either side of the Bayou, to demand
tolls according to a tariff established by the law, contracted
with the defendant Allard who undertook to make and con-
struct a road on one side for and in consideration of a right
conferred on him to receive the tolls for the term of twenty-
two years, &c. The act which authorised the construction
of these roads, required that they should be made of certain
materials designated, and constructed in a particular manner
and form, which were to be judged of by their commission-

EASTERN DIS.
May, 1834.

ORLEANS NAVI-
GATION CO.
vs.
ALLARD ET ALS

ers under oath, who were to receive their appointments from the Governor. The work after having been completed by the contractor, was submitted to the inspection of commissioners duly appointed, who reported favorably upon it. The road was received, and tolls collected for the benefit of the undertaker without opposition or interception, until the commencement of the present action.

It is clear from the testimony of the cause, that the road in question never was made in conformity with the requisitions of the law. But as it was examined and received by persons duly authorised for the purpose, we are of opinion that its original structure is not to be inquired into in the present case.

Where it is clear from the testimony of the case, that a road was not made in conformity to law; but it had been examined and received by persons duly authorised for that purpose. It was held that its original structure could not be inquired into,

The main question on which the decision of this cause rests, arises out of the section of the contract upon which the action seems to be based. We shall leave out of view the private association under the title of the Pontchartrain Road Company, in which the plaintiffs appear to have taken part, and which was composed of the defendant Allard and others, by agreement subsequent to his contract with the company, as having no bearing on the decision of the case. Nor is it necessary, according to the opinion which we have formed on the merits of the cause, to examine the bills of exception found in the record.

The forfeiture of the defendant's rights acquired under the contract, and consequent surrender of the road to the plaintiffs, are claimed in consequence of its having been suffered to remain in bad order and condition for want of necessary repairs, which the contractor continued to neglect to make or cause to be made. It is easy to perceive that the question involved in this statement is merely one of fact, to which the jury have the best right to answer.

Many witnesses were examined as to the condition of the road at various periods; all persons who had travelled on it. The result of their testimony seems to be, that when the weather was dry the road was good, and that when much rain had fallen or the water from the lake had been blown over it by storms, it was bad, sometimes impassable. These

facts, assumed from the testimony, do not, however, clearly establish the main fact, on which alone the plaintiffs have a right to recover in the present form of action, since the undertaker and constructor continued to neglect to make the necessary repairs. Being a question of fact, the verdict of the jury, as it is not clearly contrary to evidence, ought not to be disturbed. The verdict and judgment in relation to the defendant Rabassa, may be considered in the light of corollaries of the main proposition, touching Allard's rights.

<div style="float:right">EASTERN DIS.<br>May, 1834.<br><br>POULTNEY'S<br>MINORS.<br>vs.<br>BARRETT<br>ET AL.<br>The verdict of a jury on a question of fact, unless clearly contrary to evidence, will not be disturbed.</div>

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court be affirmed with costs.

*Strawbridge*, for the plaintiffs and appellants.

*Dennis* and *Preston*, for the defendants and appellees.